**Eduardo BADO–SANTANA,
et al., Plaintiffs,**

v.

**FORD MOTOR COMPANY, Defendant.**

**No. CIV. 00–2517DRD.**

United States District Court,
D. Puerto Rico.

Feb. 28, 2005.

Jose A. Gallart, Michelle Pirallo–Di Cristina, San Juan, PR, for Plaintiffs.

Angelique Doble–Bravo, Gallart Lasw Office, San Juan, PR, for Carolina Marie Bado–Cortes.

Salvador Antonetti–Zequeira, Fiddler, Gonzalez & Rodriguez, Manuel A. Guzman–Rodriguez, Guzman & Steffens, San Juan, PR, John R. Trigg, Habib Nasrullah, Wheeler, Trigg And Kennedy, P.C., for Defendant.

William J. Conroy, Thomas M. Hinchey, Campbell, Campbell, Edwards & Conroy, Wayne, PA, Habib Nasrullah, John R. Trigg, Wheeler, Trigg and Kennedy, P.C., Denver, CO, Ramon L. Vinas–Bueso, Manuel A. Guzman–Rodriguez, Guzman & Steffens, San Juan, PR, for Ford Motor Co.

## ORDER

DOMINGUEZ, District Judge.

Plaintiffs filed the instant case against defendant for the damages suffered as a consequence of an automobile accident that occurred in May 2, 1999 where a Ford Explorer over turned and Carlos Bado, the driver, died in the accident. As a consequence of his death, he left behind his then pregnant girlfriend, co-plaintiff Tatiana Cortés, who was a passenger in the vehicle and his daughter, who was born after the accident, co-plaintiff Carolina Bado Cortés. Plaintiffs claim the accident resulted from defendant's negligence in the making of the vehicle.

Pending before the Court are thirteen *Motions in Limine* filed by the defendant and four *Motions in Limine* filed by the plaintiffs. Both parties duly opposed to the motions filed by their opponent. However, in some cases, although the plaintiff filed a motion in response to defendant's request it was simply to inform the Court they had no objection to defendant's request. For purposes of organization, the Court is to commence with the parties' unopposed requests followed by defendant's opposed requests. Finally, the Court shall discuss plaintiffs' requests.

### I. Defendant's Unopposed Motions in Limine

### A. Defendant *Ford Motor Company's Motion in Limine No. 2 to Preclude Evidence Regarding Irrelevant Recall Notices* (Docket No. 136)

Defendant requests from the Court to preclude any evidence regarding irrelevant **recall** notices pertaining to Ford Explorer or any other vehicle including a recall pertaining to the front axle stabilizer bar of the Ford Explorer. Defendant sustains said evidence is irrelevant to the issues involved in this case. Accordingly, pursuant to Fed. R. of Evid. 402, the evidence should be excluded. Plaintiffs informed the Court they do not object to the exclusion of said evidence. (Docket No. 165). However, plaintiffs reserved the right to present evidence of the entire front sus-

pension system, including the front axle stabilizer, as well as other components dealing with the stability of the 1996 Explorer.

Since no objection has been presented, defendant's *Motion in Limine No. 2, (Docket No. 136),* is hereby **GRANTED.**

**B. Defendant *Ford Motor Company's* Motion in Limine No. 4 to Exclude Any and All Evidence of or Reference to the Ford Pinto or the Firestone Tire Recall (Docket No. 138)**

Defendant requests the exclusion of any references or argument to the Ford Pinto and/or the Bridgestone/Firestone tire recall. Defendant sustains the Ford Pinto and the Firestone tire recall are irrelevant to the issues of this case. Further, defendant avers said evidence constitutes inadmissible evidence of character and, furthermore, defendant alleges that any probative value that said evidence may have is substantially outweighed by the prejudice, confusion and prolongation of trial that the admission of said evidence would cause. Accordingly, pursuant to Fed. R. of Evid. 401, 402 and 403 said evidence should be excluded.

Plaintiffs informed the Court that they do not object to the exclusion of said evidence. (Docket No. 167). Consequently, defendant's *Motion in Limine No. 4, (Docket No. 138),* is hereby **GRANTED.**

**C. Defendant *Ford Motor Company's* Motion in Limine No. 8 to Preclude Evidence of Subsequent Design Changes (Docket No. 142)**

Defendant requests the Court to preclude all evidence, questions, references and testimony in trial and *voir dire* as to subsequent design changes of the Ford Explorer after the 1996 model. Defendant sustains that, pursuant to Fed. R. of Evid. 407, said evidence is inadmissible. Plain-

tiffs have informed the Court they do not intend to present evidence of subsequent remedial measures to establish a design effect or to demonstrate defendant has taken these measures. Accordingly, plaintiff's do not oppose to defendant's request and the issue is moot.

Since no opposition has been presented to defendant's request, Ford's *Motion in Limine No. 8, (Docket No. 192),* is hereby **GRANTED.**

**D. Defendant *Ford Motor Company's* Motion in Limine No. 13 to Exclude References to Closing Argument in Buell–Wilson Litigation (Docket No. 141).**

Defendant requests the Court to exclude from plaintiffs' closing argument references to the Bull–Wilson litigation. Defendant anticipates plaintiffs will seek to introduce into evidence portions of the closing argument made by an attorney representing Ford in a civil trial held California entitled *Benetta Buell–Wilson v. Ford Motor Company,* California Superior Court, San Diego County No. G1C800836. Defendant sustains Ford's attorney made several statements that were misportrayed in the press as admissions of liability on the part of Ford. Defendant requests the Court to preclude the plaintiffs, attorney and/or experts from making reference to said comments. Plaintiff do not object to defendant's request, unless a reading of the entire transcript of said proceedings reveals an admission by Ford admissible herein pursuant to the Federal Rules of Civil Procedure.(Docket No. 174). Accordingly, defendant's *Motion in Limine No. 13, (Docket No. 141),* is hereby **GRANTED.**

**II. Plaintiffs' Unopposed Motions in Limine**

**A. Plaintiffs' *Motion in Limine to Exclude Testimony About Prevalence of Alcohol Related Accidents***

*in the Area* (Docket No. 148)[1]

Plaintiffs request the Court to exclude Officer Leslie Ana Rosado Muñoz's and Sgt Allen Andujar's testimony as to the prevalence of alcohol related accidents. Plaintiffs sustain neither officer has personal knowledge as to the prevalence of alcohol related accidents in State Road 102 where the accident, in the instant action, occurred. Further, plaintiffs aver said evidence is not relevant to, nor probative of, any facts in the case. Accordingly, plaintiffs request that, pursuant to Fed. R. of Evid. 401, 402, 701, 801 and 802, said evidence be excluded from the case.

Defendant does not oppose to plaintiffs' request.(Docket No. 159). Accordingly, plaintiffs' *Motion in Limine to Exclude Testimony About Prevalence of Alcohol Related Accidents in the Area, (Docket No. 148),* is hereby **GRANTED.**

### B. Plaintiffs' *Motion in Limine to preclude Commentary or Testimony Geared to Justify a Verdict Against Plaintiffs as a "Matter of Principle" and/or to "Send a Message"* (Docket No. 155)

Plaintiffs seek exclusion of any comment or argument from witnesses or counsel as to the allegation that Ford is defending this case "as a matter of principle" or uprightness or that a verdict in its favor, is justified as a "matter of principle" or to "send a message" to people driving under the influence or driving above the speed limit, not to sue Ford for damages. Plain-

tiffs sustain these comments have no probable value and could unduly influence the jury against plaintiffs and detract from the real issues of the case. Defendant does not oppose to plaintiffs' request. (Docket No. 159). Accordingly plaintiffs' *Motion in Limine to preclude Commentary or Testimony Geared to Justify a Verdict Against Plaintiffs as a "Matter of Principle" and/or to "Send a Message"* (Docket No. 155) is hereby **GRANTED.**

### III. Defendants Opposed Motions in Limine

### A. Defendant *Ford Motor Company's Motion in Limine No. 1 to Preclude Plaintiffs from Presenting Any Evidence of Mild Traumatic Brain Injury* (Docket No. 135)

Defendant moves the Court to preclude plaintiffs from presenting at trial all evidence as to any mild traumatic brain injury of co-plaintiff Tatiana Cortés. Defendant sustains said evidence should be precluded because the same is unsupported by medical evidence. Defendant alleges plaintiffs' expert Dr. Margarida, a neuropsychologist, is not a neurologist nor a doctor in medicine and concedes she cannot make a diagnosis of mild traumatic brain injury in the absence of a diagnosis from a neurologist. Defendant sustains the neurologist who treated plaintiff Tatiana Cortés before and after the accident, Dr. Angel Chinea,[2] ruled out any neurological damage or impairment as a result of the accident. Further, Dr. Margarida

---

1. The system reflects that this is Docket No. 151. In reality in Docket No. 151 plaintiffs request the exclusion of Michelle Bogler's testimony.

2. Plaintiff Tatiana Cortés started visiting said doctor in 1995 due to chronic pain, nightmares, dizzy spells and headaches. The neurologist concluded that the symptoms responded symptoms of migraine headaches. During her post accident visit, Dr. Chinea

ordered and MRI and EEG. The MRI was described as normal. At his deposition, Dr. Chinea concluded that, although the EEG ordered by him described a "paroxysmal spike and wave in the left parietal central area," the normal results of a 24 hour special ambulatory EEG performed on the plaintiff led him to conclude the abnormal spike in the previous EEG was either secondary to her preexisting migraine headaches or to emotional factors.

has never treated plaintiff Tatiana Cortés as a therapist or a treating neuropsychologist and, as she concedes, is not an expert on mild traumatic brain injury since she has not performed extensive research or writing on the field. Accordingly, defendant sustains Ford would be unfairly prejudiced pursuant to Fed.R.Evid. 403, if plaintiffs are allowed to present Dr. Margarida, a psychologist, ·to establish an organic neurological deficiency stemming from the accident. Further, by her own admission, Dr. Margarida is not qualified to render an opinion as to a mild traumatic brain injury absent an independent neurological diagnosis and pursuant to Fed.R.Evid. 702 her testimony should be excluded.

Plaintiff duly opposed the request (Docket No. 164). Plaintiff sustains Dr. Margarida has almost 20 years of experience in the field of neuropsychology, she is a member of the National Academy of Neuropsychology, and has attended seminars of mild traumatic brain injury. Plaintiffs aver that, based on Dr. Margarida's experience, training and education she is qualified to testify on the subject of mild traumatic brain injury. Further, plaintiffs allege this expert's conclusions are substantiated by interviews she conducted of Cortés, her parents, treating physicians and her later review of Cortés' medical records. Further, after practicing several tests on her, Dr. Margarita concluded that Cortés met the criteria for mild traumatic brain injury.

Rule 702 of the Federal Rules of Evidence specifically addresses expert witnesses.[3] This rule grants all expert witnesses testimonial latitude unavailable to other witnesses on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline. "Where such testimony's factual basis, data· principles methods or their application are called sufficiently into question, the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of the [relevant] discipline.'" *Kumho Tire Co., Ltd., et. al. v. Carmichael, et. al.,* 526 U.S. 137, 149, 119 S.Ct. 1167, 143 L.Ed.2d 238(1999) *quoting Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 at 592, 113 S.Ct. 2786, 125 L.Ed.2d 469(1993). See also Id. at 594. ("The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overreaching subject is the scientific validity and thus the evidentiary relevance and reliability of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate").

 Trial courts have great latitude in assessing whether the expert testimony will materially assist the jury. *United States v. Sebaggala,* 256 F.3d 59, 65 (1st Cir., 2001) *citation omitted.* The judge functions as a gatekeeper of proffered expert evidence to ensure that the same is relevant and has a reliable foundation. The Court plays the role of the gatekeeper, but only as to two aspects: (1) the existence of sufficient facts and/or data to allow an expert to reach a conclusion and; (2) the reliability of the principles and methods used to arrive at those opinions. The ultimate weight of an expert's opinion is for the trier of fact, that is, the jury who

---

3. "If scientific technical specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is product of reliable principles and methods and (3) the witness has applied the principles and methods to the facts of the case." Fed. R.Evid. 702.

may then evaluate the weight and credibility of the expert.

This Court has ample discretion when determining whether it should admit or exclude expert testimony. *Irvine v. Murad Skin Research Labs.*, 194 F.3d 313, 320 (1st Cir., 1999). If an opponent objects to a proposed expert witness, the Court must determine its reliability. In some cases, a Daubert Hearing must be held. Said hearing is unnecessary "where the reliability of the expert's methods are taken for granted" *Kumho Tire Co. v. Carmichael*, 526 U.S. at 152, 119 S.Ct. 1167. Further, on occasions, the Court has sufficient information to make a determination without the necessity of holding a hearing. *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 249 (6th Cir., 2001).

The Court finds defendant has presented a Daubert challenge as to the qualifications of plaintiffs' expert Dr. Margarida to testify, in the form of an opinion, as to plaintiffs' contention that plaintiff Tatiana Cortés suffered Mild Traumatic Brain Injury as a result of the accident. **The Court shall hold a Daubert Hearing to determine if Dr. Margarida, as a neuropsychologist and without support of any medical evidence as to the diagnosis of** said condition, is qualified to testify as to plaintiff Tatiana Cortés' alleged Mild Traumatic Brain Injury. Until then, defendant's request for the exclusion of Dr. Margarida's expert testimony (Docket No. 135) is **DENIED** without prejudice until the court holds the hearing before trial.[4]

**B. Defendant *Ford Motor Company's* Motion in Limine No. 3 to Preclude Evidence of Other Accidents, Lawsuits or Claims (Docket No. 137)**

Defendant moves the Court to preclude any evidence of other accidents, lawsuits or claims concerning the Ford Explorer. Defendant sustains said evidence is irrelevant because plaintiff cannot establish the similarity of other incidents to the instant case. Further, defendant contends even if substantial similarity could be established, this evidence should be excluded because the potential prejudice outweighs its probative value under Fed. R. of Civ. 403. Introduction of said evidence, defendant avers, could inflame the jury and likely cause the jury to render a decision on an improper basis.

Plaintiffs duly opposed defendant's request (Docket No. 166). Plaintiffs sustain

---

**4.** The court reminds the parties that, as far as medical expert testimony is concerned, under holdings of the First Circuit Court of Appeals at *Mitchell v. United States*, 141 F.3d 8, 15 (1st Cir.1998); *Payton v. Abbott Labs.*, 780 F.2d 147, 155 (1st Cir.1985) and *Gaydar v. Sociedad Instituto Genico Quirúrgico y Planificación Familiar*, 345 F.3d 15, 24–25 (1st Cir.2003) using Doubert gate keeping standards, the opinion of a medical doctor is to be admitted even though he is not an expert in a specialized field of medicine v. the opinion of a specialized physician in the field. "The mere fact that Dr. Rodríguez was not a gynecologist does not mean he is not qualified to give expert opinions regarding Gaylous pregnancy. The proffered expert physician need not be a specialist in a particular testimony relating to that discipline. (Citations omitted)

In fact it would have been an abuse of discretion for the court to exclude Dr. Rodríguez's testimony on the sole basis that his medical specialty was something other than gynecology or obstetrics. *Holbrook v. Lykes Bros. S.S. Corp.*, 80 F.3d 777, 782 (3rd Cir.1996). The district court erred by finding that Dr. Carpenter was not qualified to render a diagnosis or to discuss the pathology report because he was not a pathologist, oncologist, or expert in definite cancer diagnosis."

This discussion is all pertinent relating to the issue of a neuropsychologist using as a basis for his opinion the opinion or findings of a medical doctor not a specialist but a physician nevertheless. The issue then belongs to the jury to weight the evidence of the testimony of the two physicians.

the evidence defendant requests to exclude is relevant in order to establish that Ford was on notice that the 1996 Ford Explorer had stability problems and/or that its seatbelt, the RCF67, was subject to inertial unlatching of seat belts. Plaintiffs aver that evidence in order to establish that defendant was put on notice of the defect does not require that the previous incidents necessarily occurred in identical circumstances. Further, plaintiffs sustain prior incidents of inertial unlatching are admissible to rebut Ford's contention said events do not occur in real crashes and that constitutes a "parlor trick".

In order to be admissible in Court, pursuant to the Federal Rules of Evidence, any purported evidence must be relevant. Evidence is considered as relevant when it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. of Evid. 401. However, even relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Fed. R. of Evid. 403. Under this rule, the Court has "considerable latitude in determining whether to admit or exclude evidence". *Santos v. Sunrise Medical*, 351 F.3d 587, 592 (1st Cir., 2003) citing *Espeaignnette v. Gene Tierney*, 43 F.3d 1, 5 (1st Cir.1994).However, "[b]ecause Rule 403 requires the exclusion of relevant evidence, it is an extraordinary measure that should be used sparingly." *Campbell v. Keystone Aerial Surveys*, 138 F.3d 996, 1004 (5th Cir., 1998) quoting *United States v. Morris*, 79 F.3d 409, 411 (5th Cir., 1996) *citations omitted*. In sum, the Federal Rules of Evidence allow the Court to exclude relevant evidence if the probative value of the evidence is outweighed by the possibility of unfair prejudice to one of the parties. The Court has discretion in conducting the weighing process. *Raymond v. Raymond Corp.* 938 F.2d 1518, 1523 (1st Cir., 1991).

Plaintiffs seek to present to the jury evidence as to prior accidents to establish Ford was on notice the 1996 Ford Explorer had stability problems and/or its seatbelt, the RCF67, was subject to inertial unlatching. Defendants seek to preclude the evidence alleging that said evidence is irrelevant and, even if the Court concludes that the evidence is relevant, the same should be excluded because the evidence's probative value is outweighed by the potential prejudice. Defendant sustains said evidence is irrelevant because the plaintiffs have not established the "substantial similarity" of previous accident with the accident. Plaintiffs claim, on the other hand, that substantial similarity is not required when the evidence is presented in order to establish defendant was put on notice as to the stability problems of the 1996 Ford Explorer and/or that the inertial unlatching of its seatbelt, the RCF67, may occur in real life accidents. The Court disagrees.

■■ Evidence of prior accidents may be relevant and, therefore, comply with the relevancy requirement of Rule 401. However, its admissibility must be evaluated carefully due to their inflammatory nature. "For evidence of other accidents to be relevant [ ... ] the other accidents must be 'substantially similar to the one at issue.'" *Shields v. Sturm, Ruger and Co.*, 864 F.2d 379 (5th Cir., 1989) citing *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1082–83 (5th Cir., 1986). In other words, "evidence of prior accidents is admissible ... only if the proponent of the evidence shows that the accidents occurred under circumstances substantially similar to those at issue in the case at bar." *Moulton v. Rival Co.*, 116 F.3d 22, 26–27

(1st Cir., 1997) quoting *McKinnon v. Skil Corp.*, 638 F.2d 270, 277 (1st Cir., 1981). However, "[e]ven when substantial identity of the circumstances is proven, the admissibility of such evidence lies within the discretion of the judge who must weigh the dangers of unfairness, confusion and undue expenditure of time in the trial of collateral issues against the factors favoring admissibility." *Caraballo–Rodríguez v. Clark Equipment Co.*, 147 F.Supp.2d 66, 74 (D.P.R., 2001) citing *McKinnon v. Skil Corp.*, 638 F.2d at 277. Hence, although evidence of prior accidents may be relevant, the Court may use its discretion to exclude it should the court finds the potential prejudice that could be caused by the evidence outweighs its probative value.

■■■ The substantially similarity doctrine allows a party to present in evidence prior accidents involving the defendant in order to demonstrate "notice, magnitude of the danger involved, the [party's] ability to correct a known defect, the lack of safety for intended use ..." *Heath v. Suzuki Motor Corp.* 126 F.3d 1391, 1396 (11th Cir.1997) quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661 (11th Cir., 1988). See also *First Security Bank v. Union Pacific Railroad Co.*, 152 F.3d 877–79 (8th Cir., 1998) quoting *Thomas v. Chrysler Corp.* 717 F.2d 1223, 1225 (8th Cir., 1983) ("Although evidence of prior accidents may be admissible to prove notice on the part of a defendant, any such accidents admitted must be 'sufficiently similar in time, place or circumstances to be probative.'") The admission of said evidence is "predicated upon a showing that the circumstances surrounding them were substantially similar to those involved in the present case." *Ponder v. Warren Tool Corp.*, 834 F.2d 1553, 1560 (10th Cir., 1987) quoting *Karns v. Emerson Elec. Co.* 817 F.2d 1452, 1460 (10th Cir.1987) However, when said evidence is presented to demonstrate notice or defendant's knowledge as to a dangerous condi-

tion, the rule requiring substantial similarity of those accidents with the accident at issue is more relaxed, "and any differences in the circumstances surrounding the occurrences go merely to the weight to be given to the evidence." *Shields v. Sturm, Ruger and Co.*, 864 F.2d at 381 citing *Jackson v. Firestone Tire & Rubber Co*, 788 F.2d 1070, 1083 (5th Cir.1986). See also *Exum v. General Electric Co.*, 819 F.2d 1158, 1162–63 (D.C.Cir., 1987) quoting Weinstein & Berger, Weinstein's Evidence § 401[10] at 401–66–67 ("if the accident is offered to prove notice, a lack of exact similarity of conditions will not cause exclusion provided the accident was of a kind which should have served to warn the defendant."). See also *Ponder v. Warren Tool Co.*, 834 F.2d at 1560.("If the accident is offered to prove notice, a lack of exact similarity of the conditions will not cause exclusion provided the accident was of a kind which should have served to warn the defendant." citations omitted); *Four Corners Helicopters v. Turbomeca*, 979 F.2d 1434, 1440 (10th Cir.1992) quoting *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1407 (10th Cir.1988) ("the requirement of substantial similarity is relaxed, however, when the evidence of other incidents is used to demonstrate notice or awareness of a potential defect.")

■■■ Plaintiffs have failed to establish the similarity of the proposed evidence of prior accidents to the accident in the instant case. Plaintiffs simply sustain that, due to the fact that the evidence is to be presented in order to establish that defendant had notice as to the stability problems of the 1996 Ford Explorer, they are not required to establish said similarity. The Court disagrees. "Even when [the evidence] is offered solely to show notice, the proponent of such evidence must establish reasonable similarity." *Johnson v. Ford Motor Co.*, 988 F.2d 573, 580 (5th

Cir., 1993). Further, the Court considers evidence of prior accidents, in order to establish that the seat belt unlatching may occur, should also comply with the substantial similarity doctrine. Notwithstanding, the Court **DENIES WITHOUT PREJUDICE** defendant's *Motion in Limine No. 3 to Preclude Evidence of Other Accidents, Lawsuits or Claims* (Docket No. 137). Should the plaintiffs establish the "reasonable similarity" of the prior accidents to the accident in the instant case, the Court would then address if the evidence, although relevant, should be excluded due to Rule 403's considerations. Plaintiff shall be granted a last opportunity at the Daubert hearings to be held by the court, if no evidence is available this motion is to be granted.

### C. Defendant *Ford Motor Company's* Motion in Limine No. 5 to Preclude Post Mortem Photographs of the Deceased (Docket No. 139)

Defendant moves the Court to preclude the introduction of post mortem photographs of the deceased, Carlos Bado, taken at the scene of the accident and during his autopsy. Defendant sustains said photographs are irrelevant. Further, defendant claims that, even should the Court deem the photographs relevant, they are to be precluded pursuant to Fed.R. Evid. 403. Plaintiffs have no objection to the exclusion of autopsy photos unless its admission is required due to any oral testimony elicited during the trial.(Docket No.168). Accordingly, defendant's request for the exclusion of autopsy photographs is hereby **GRANTED.**

However, plaintiffs contend the photographs taken at the scene of the accident are relevant and its prejudicial effect, if any, is outweighed by their probative value. Plaintiffs sustain that photographs are admitted when they are probative of a relevant fact. Plaintiffs intend to present accident scene photos, including the dece-

dent's body, in order to show the condition of his body to establish moral damages for co-plaintiff Tatiana Cortés. Further, plaintiffs aver that, since they contend that after the accident Mr. Bado was conscious and tried to speak, it is important for the jury to see these photos in order to be able to determine if, in fact, the decedent was able to try to speak as claimed by witnesses. Furthermore, plaintiffs allege that, although the photos portray the lifeless body of Mr. Bado, the photos are not so gruesome in nature as to inflame the jury against the defendant.

■ Evidence is considered as relevant when it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. of Evid. 401. However, even relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Fed. R. of Evid. 403. An exclusion pursuant to Rule 403 is an extraordinary measure that should be used in limited situations since it is an exclusion of relevant evidence. Under this rule, the Court has "considerable latitude in determining whether to admit or exclude evidence". *Santos v. Sunrise Medical,* 351 F.3d at 592 citing *Espeaignnette v. Gene Tierney,* 43 F.3d at 5.

The proposed photographs of Mr. Bado at the accident scene may be relevant in order to establish co-plaintiff Tatiana Cortés' moral damages claim. Further, the photographs may assist the jury in determining either if Mr. Bado, after the accident, as claimed by the plaintiffs, was conscious and tried to speak or, to the contrary, as claimed by defendants, he was

unconscious and died immediately, if not instantly.

■ The Court has reviewed the photographs. However, the Court shall refrain from issuing its decision until it receives evidence as to the facts of the accident, what happened after the accident, if Tatiana Cortés saw Mr. Bado's body after the accident and for how long did she had access to her boyfriend's body on the conditions portrayed by the photographs. After receiving this evidence, the Court shall make a determination as to the relevancy of the proposed evidence pursuant to Fed. R. of Evid. 401. Should the Court find the evidence relevant, then it will determine if the same, although relevant should be excluded under Rule 403 considerations. The parties are reminded that a 403 exclusion should be used sparingly. *United ed States v. Morris,* 79 F.3d at 411. The Court "has broad discretion in assessing admissibility under Rule 403." *Campbell v. Keystone Aerial Surveys,* 138 F.3d at 1004. The fact that the photographs may be chilling and/ or gruesome does not mean that the trial court has to exclude them. *Haley v. Gross,* 86 F.3d 630, 645–646 (7th Cir., 1996). See also *Campbell v. Keystone Aerial Surveys,* 138 F.3d at 1004–1005 (citing several circuits' decision upholding district courts' decisions to admit the photographs, or their decision to exclude them pursuant to Rule 403). Accordingly, the defendant's *Motion in Limine No. 5* to preclude the post mortem photographs of Mr. Bado at the scene of the accident (Docket No. 139) is hereby **DENIED WITHOUT PREJUDICE.** (The matter as to post Mortens photograph requires no further consideration, the court shall rule at trial.)

## D. Defendant *Ford Motor Company's Motion in Limine. No. 6 to Preclude Plaintiffs, their Attorneys, or their Experts from making Reference to or Presenting Evidence of News Articles or Television Programs Regarding or Referring to the Ford Explorer* (Docket No. 140)

Defendant requests the Court to preclude plaintiffs, their attorney or experts to make reference or presenting evidence of news articles or television programs, including the testing described on those programs and/or articles regarding or referring to the Ford Explorer. Defendant sustains the contents of these articles and/or programs is irrelevant, constitutes hearsay and is prejudicial. Accordingly, the same should be excluded from trial.

Plaintiffs duly opposed defendant's request (Docket No. 169). Plaintiffs claim that, pursuant to Fed. R. Evid. 703, said evidence may be admitted if the experts relied upon it in order to form their opinions or make reasonable inferences upon a subject.

First, the Court asserts defendant's contention as to any material related to the Ford/Bridgestone litigation. Defendant sustains that any program or article referent to the Ford/Bridgestone litigation as to defective tires is irrelevant since in the instant case, plaintiffs' tire expert already testified there was no defect on the tires of the Explorer at issue. Further, plaintiffs are not presenting evidence of tire defect since they dismissed their claim against Firestone. The Court agrees. **Accordingly, plaintiffs are precluded from presenting any article or T.V. program related to defective tires or the above mentioned litigation.** Consequently, defendant's request for the exclusion of any news articles or television programs, including the testing described on those pro-

grams and/or articles regarding or referring to tire defect, is hereby **GRANTED.**

As to articles or television programs related to the Ford Explorer, defendant sustains said evidence describing accidents on Explorers refers to accidents that are not substantially similar to the accident in this case. Accordingly, said evidence is irrelevant and plaintiffs should be precluded from presenting it. Further, defendant sustains that the articles and programs constitute inadmissible hearsay.

There is no doubt that evidence as to news articles or television programs is inadmissible hearsay if offered to prove the truth of the matter discussed in them. See Fed. R. of Evid. 801(c). See also *United States v. Hatchett*, 918 F.2d 631 at 642 (6th Cir., 1990). However, should said evidence contain information as to prior accidents, as previously explained, in order to be admitted, **that is the evidence as to the prior accidents,** plaintiffs have to establish that said accidents are substantially similar to the accident in the instant case.[5] See discussion *ante* as where the Court addressed defendant's *Motion in Limine No. 3 to Preclude Evidence of Other Accidents, Lawsuits or Claims* (Docket No. 137). Plaintiffs have failed to establish the "substantial similarity" of the proposed evidence of prior accidents to the accident in the instant case.

Plaintiffs limited their opposition to alleging that the evidence should be permitted pursuant to Fed. R. of Evid. 703. The Court first addresses the issue of relevancy since irrelevant evidence has no place in the court room. As previously discussed, evidence is considered as relevant when it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. of Evid. 401. In the case of prior accidents, in order for the evidence to be relevant and, therefore, admitted, the proponent of the evidence must establish "substantial similarity" of the facts of the accident that they intend to present with the accident object of the litigation. Plaintiffs have failed to establish said similarity since they contend that the evidence is admissible on other grounds.

Plaintiffs invoke Fed. R. of Evid. 703 as grounds for the admission of this evidence. The Fed. R. of Evid. 703 provides that information "... of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not to be admissible in evidence in order for the opinion or inference to be admitted." The rule goes on to state that said facts or data that is not admissible "shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." This rule allows the admission of expert testimony based on "facts or data ... of a type reasonably relied upon by experts in the particular field." *Trull v. Volkswagen of America* 187 F.3d 88, 97 (1st Cir., 1999) *citations omitted.* In sum, the rule allows the expert testimony based on said inadmissible facts or data, it does not allow the data itself. *Engebretsen v.*

---

5. Pursuant to the "substantial similarity doctrine" evidence of other incidents of product failure are probative of the existence of a design defect if the incidents occurred under the circumstances substantially similar to plaintiffs' accident. *Carballo–Rodríguez v. Clark Equipment Co.,* 147 F.Supp.2d at 73.

Therefore, evidence of prior accidents is admissible only if the proponent of the evidence shows that the accidents occurred under circumstances substantially similar to those at issue in the case at bar. *McKinnon v. Skil Corp.,* 638 F.2d at 277.

*Fairchild Aircraft Corp.* 21 F.3d 721, 728–729 (6th Cir., 1994) (experts may rely on inadmissible material in forming the basis of opinions, but inadmissible material may not be admitted for truth of the matter asserted.); See Cotchett Joseph W., *Federal Courtroom Evidence* (5th ed), Mathew Bender & Co., (2003), § 703.3 at 19–46 quoting Committee Note (2000)("Rule 703 has been amended to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted.")

 Hence, plaintiffs' reliance on this rule is misplaced. The rule simply permits an expert witness to rely on this type of information to base this conclusions or inferences. It is not a rule that would allow the admittance of the evidence otherwise inadmissible. Plaintiffs' experts may base their opinions on said inadmissible evidence, providing that it is established that said evidence is "of a type reasonably relied upon experts in the particular field." Fed. R. of Evid. 703. Accordingly, plaintiffs' contention that said evidence may be admissible pursuant to this rule is simply misplaced.

Notwithstanding, since said evidence could potentially contain evidence as to prior accidents that could be admissible after a showing that the said accidents occurred in "substantially similar" circumstances as to the accident object of this action, defendant *Ford Motor Company's Motion in Limine No. 6 to Preclude Plaintiffs, their Attorneys, or their Experts from making Reference to or Presenting Evidence of News Articles or Television Programs Regarding or Referring to the Ford Explorer* (Docket No. 140) is hereby **DENIED WITHOUT PREJUDICE**. Should no evidence exists at to "substantial similarity" this motion is to be granted.

E. Defendant *Ford Motor Company's Motion in Limine No. 7 to Exclude any Reference to or Evidence, Testimony or Argument Concerning the Design and Development History of the Bronco II and the First Generation Explorer* (Docket No. 141)

Defendant moves the Court to preclude plaintiffs from introducing or making reference to the design and development history of the Bronco II and the first generation Explorer (UN46).[6] Defendant sustains that said evidence is irrelevant and, accordingly, must be excluded pursuant to Fed.R.Evid. 401 and 402. Defendant alleges that, since the UN46 (first generation Explorer) and the UN105 (second generation Explorer, the vehicle in the instant case) are two different vehicles evidence concerning the UN46 is irrelevant.[7] For the same reasons, defendant further avers any evidence as to the Bronco II should also be excluded.[8] In the alternative, defendant sustains said evidence should be excluded pursuant to Fed. R. of Evid. 403.

---

**6.** The first generation Explorer (UN 46) was manufactured from 1990–1994. The second generation Explorer (UN105) was manufactured from 1995–2000.

**7.** Defendant sustains that the vehicles are totally different. The 1995 Explorer was redesigned. The front and rear suspension and the frame are different from their previous model (UN46).

**8.** The Explorer involved in the case has four doors and the Bronco II has two doors. The rear suspensions are different, the steering systems are different, the frames are different and the wheels and tires are different. Therefore, the Explorer and Bronco II have different handling and stability characteristics.

Plaintiffs opposed defendant's request (Docket Nos. 173 and 178). Plaintiffs allege said evidence, which was presented by plaintiffs' expert Dr. David Renfroe, is admissible pursuant to Fed. R. of Evid. 702 and 703. Plaintiffs sustain evidence of design and development history of the Bronco II and UN46(first generation Explorer) is pertinent to establish that Ford knew before releasing for production UN105 (second generation Explorer) of design factors which contributed to rollover and yet failed to make the necessary changes to the UN105's design. Plaintiffs claim facts or data that are otherwise inadmissible can be disclosed to the jury by the proponent of the opinion when its probative value of assisting the jury to understand the expert outweighs their prejudicial effect. Plaintiffs sustain that, since Ford denies that the 1996 Explorer (UN105) was defective when it left it hands, evidence to demonstrate that Ford was aware of the design factors that contributed to the vehicle's rollover is admissible since its probative value, outweighs any prejudicial effect.

■■■ The Court must first address the relevancy of the evidence. There is no doubt that neither the first generation Explorer (UN46) nor the Bronco II are the same vehicle as the one subject to this litigation. It is plaintiffs' contention that certain aspects of these three models which were key to the rollover stability of these vehicles were not changed for the 1996 Explorer. Plaintiffs aver that, even after Ford allegedly had knowledge as to the design factors that contributed to the

vehicles' roll over propensity, it failed to make the changes before releasing the UN105, the vehicle in the instant case. In sum, plaintiffs contend evidence of the design and development history of these two vehicles is pertinent to establish that Ford was on notice, before releasing the UN105, the vehicle in the instant case. The Court finds that, in the matter that plaintiffs' evidence makes more probable or less probable the fact that Ford knew, before releasing the UN105, second generation Explorer object of the instant case, of design factors which allegedly contributed to rollover and it failed to make the changes to the design, the evidence is relevant to the instant case, where defendant contends that the vehicle object of this litigation had not defect. Fed. Rule of Evid. 401.[9]

Defendant requests the Court that, in the event the Court would find these evidence relevant, the same should be excluded pursuant to Rule 403 considerations. The Court disagrees. In determining if certain relevant evidence must be excluded due to Rule 403 considerations, the Court has considerable discretion. *Santos v. Sunrise Medical*, 351 F.3d at 592. Although the Court accepts that even relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice ..." Fed. R. of Evid. 403, "[b]ecause Rule 403 requires the exclusion of relevant evidence, it is an extraordinary measure that should be used sparingly." *Campbell v. Keystone Aerial Surveys*, 138 F.3d at 1004 quoting *United*

---

9. Further, plaintiffs intend to present said evidence as part of Dr. Renfroe's expert testimony. Dr. Renfroe found substantial similarities regarding the roll over propensity of these vehicles. The Fed. R. of Evid. 703 provides information "... of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not to·be admissible in evidence in order for the opinion or inference to be admitted." Fed. R. of Evid. 703. Hence, Dr. Renfroe's opinion and inferences are admissible even if the evidence in which he sustained said opinion is· not. Hence, even if the Court found the evidence was not admissible, which the Court has not, the experts' opinion or inference is.

*States v. Morris,* 79 F.3d at 411 *citations omitted.* The Court finds that this is not a situation, where this extraordinary measure is warranted.

Further, the court cannot proceed to preclude the evidence because there are issues of weight and credibility as to similarities and dissimilarities in the two version of the vehicle in question.

For the aforementioned reasons, defendant's *Motion in Limine No. 7 to Exclude any Reference to or Evidence, Testimony or Argument Concerning the Design and Development History of the Bronco II and the First Generation Explorer* (Docket No. 141) is hereby **DENIED.**

### F. Defendant *Ford Motor Company's Motion in Limine No. 9 to Preclude Testimonial Evidence in Support of the Survival Claim (Mr. Bado's State of Consciousness)* (Docket No. 143)

Defendant requests the Court to preclude plaintiffs from presenting testimonial evidence in support of plaintiffs survival claim. Defendant sustains that, since plaintiff's own forensic pathologist was unable to support plaintiff's claim and the Court precluded his testimony as to this aspect, plaintiffs should be precluded from presenting other evidence to support their contention that after the accident, Carlos Bado was conscious. Defendant avers the proffered evidence will not aid the jury in determining the fact as to whether Carlos Bado consciously suffered before he died. Defendant further contends that, in the instant case, the lay jurors will not understand, without the aid of expert testimony, whether Mr. Bado was conscious or not after the accident. Since plaintiffs were already precluded to present Dr. Landrón's testimony, no testimonial evidence should be admitted in support of plaintiffs' survival claim.

Plaintiffs opposed said request (Docket No. 171). Plaintiffs sustain co-plaintiff Carolina Bado Cortes, seeks redress for the damages inflicted to her father as a result of the accident where he lost his life. Accordingly, she intends to demonstrate his father did not die instantly. Further, she intends to demonstrate, through the testimony of eye witnesses (Israel Dominicci, Georgina González and Tatiana Cortés), her father was breathing, with a pulse, opened his eyes and intended to speak. Furthermore, plaintiffs contend that, although Dr. Landrón was precluded from testifying about Bado's *state of consciousness* and *alcohol redistribution,* that does not preclude the plaintiffs from using him as a witness for other issues or to use other witnesses to address the issues of alcohol impairment and consciousness. As lay witnesses, Israel Dominicci, Georgina González and Tatiana Cortés will testify as to what they saw.

Plaintiffs intend to present evidence as to Mr. Bado's alleged minutes of consciousness before he died as a result of a car accident. Plaintiffs witnesses Israel Dominicci and Tatiana Cortés are proposed to testify as to Mr. Bado's alleged actions (breathing, with a pulse, opened his eyes and intended to speak) that allegedly would help the jury to make a finding that Mr. Bado did not die instantly and that he was conscious for a period of time. Defendant sustains that since this Court already exclude Dr. Landrón's testimony as to Mr Bado's state of consciousness, the Court should also exclude the testimonial evidence proffered by the plaintiffs as to this controverted fact. The Court disagrees.

This Court excluded Dr. Landrón testimony as to alcohol distribution and as to Mr. Bado's state of consciousness after the accident. (Docket No. 134). In excluding Dr. Landrón's expert testimony, the Court reasoned that since Dr. Landrón

concluded that there was a *fifty percent* chance that Mr. Bado remained conscious for several minutes after the vehicle rolled over him, the Court failed to find "how said testimony would help the Jury reach a conclusion more than the throwing of a coin could." Id at p. 3. Accordingly, the Court excluded Dr. Landrón's testimony as to the probability that Bado–Barreto remained conscious after he was rolled over by the Explorer. Further, the Court excluded Dr. Landrón's testimony as to his theory in alcohol distribution after concluding that "Dr. Landrón [was] providing merely yet another opportunity for speculation." Id. at p. 4.The Court concluded that Dr. Landrón's opinion was "not predicated on facts legally sufficient to provide a basis for his expert opinion." *Id.* In other words, the Court's exclusion of this expert's opinion responded strictly to Daubert considerations. Plaintiffs' proposed witness testimony as to Mr. Bado's consciousness consists of the testimony of three factual witnesses who were at the scene of the accident and are to testify as to what they saw. Definitely, said testimony is relevant since it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. of Evid. 401. Accordingly, the testimonial eye witness evidence should be admitted. The Court fails to find how said testimony could confuse the issues in order to warrant its exclusion pursuant to Rule 403 which is an extraordinary remedy that should be used sparingly. *Campbell v. Keystone Aerial Surveys,* 138 F.3d at 1004 quoting *United States v. Morris,* 79 F.3d at 411. Defendant's contention that expert testimony is required to help the jury make a determination as to whether Mr. Bado was conscious or not after the accident also fails. The fact that plaintiff may present only factual witnesses instead of expert testimony to support their conten-

tion as to Mr. Bado's state of consciousness goes directly to the weigh the jury may attribute to the evidence, not its admissibility. Accordingly, defendant's request for the exclusion of any factual witness' testimony (Docket No. 143), Israel Dominicci, Georgina González and Tatiana Cortés as to Mr. Bado's alleged actions in order to establish his state of consciousness after the accident is hereby **DENIED.** However, plaintiffs' intention to present Dr. Landrau to testify as to the fact that to demonstrate that despite Mr. Bado's fatal injuries he did not die instantly, is an attempt to circumvent this Court's ruling as to the exclusion of his expert testimony pursuant to Daubert considerations. Accordingly, as to Dr. Landrau's expert testimony, defendant's request is hereby **GRANTED,** (Docket No. 143). Hence, Docket No. 143 is partially granted and partially denied as set forth herein.

### G. Defendant *Ford Motor Company's Motion in Limine No. 10 to Preclude Certain Fact Witness Testimony* (Docket No. 144)

Defendant moves the Court to preclude plaintiffs from presenting testimony as to: (1) the events surrounding the accident; (2) as to an alleged tire explosion and; (3) testimonial evidence, other than plaintiff's economic expert, to establish economic loss. Plaintiffs duly opposed defendant's request (Docket No. 172).

### 1. Testimonial evidence as to the events surrounding the accident

Defendant requests from the Court to exclude testimonial evidence from individuals who did not witness the accident, nor of the events that occurred immediately after the accident (i.e.(1) Iván Bado, brother of Carlos Bado). Defendant sustains this witness was not present at the accident, and hence, did not experience or witness the accident. Defendant acknowledges plaintiffs proffered that this witness is to

testify as to the events that surrounded the accident. However, defendant claims any testimony of this witness is irrelevant. Further, defendant avers the emotionally charged testimony would cause unfair prejudice which outweighs any probative value.

On the other hand, plaintiffs allege Iván Bado's testimony (decedent's brother), is not cumulative since he was with the deceased all day and immediately before the accident. Further, he knows the deceased was in the habit of wearing a seatbelt and interacted with Tatiana Cortés immediately after the accident and, therefore can testify as to her state of hysteria after the accident.

■ Iván Bado is to testify as to his brother's habit of wearing a seatbelt, as to his conduct before the accident and as to Tatiana Cortés' state of hysteria immediately after the accident. His testimony as to the Mr. Bado's habit in wearing a seatbelt is relevant as to defendant's allegation of comparative negligence. Pursuant to Fed. R. of Evid. 406 "[e]vidence of the habit of the person . . . is relevant to prove that the conduct of the person . . . . was in conformity with the habit." In other words, Iván Bado's testimony as to his brother's habit of using his seatbelt may be presented to establish that on the day of the accident he was wearing the seatbelt. Accordingly, said evidence could make more probable the fact that the deceased was, in fact, wearing the seatbelt on the day of the accident. Further, Iván Bado's testimony as to Mr. Bado's conduct before the accident is also relevant to the case. Defendant sustains, and are to present evidence, as to the fact that Mr. Bado was driving under the influence of alcohol. Accordingly, his brother's testimony as to

his conduct before the accident is very relevant to the case. In the manner that his testimony makes more or less probable a specific fact that would be consequential, the same is relevant to the case. Fed. R. of Evid. 401. Finally, Iván Bado is to testify as to Tatiana Cortés' state of hysteria immediately after the accident. Tatiana Cortés is claiming moral damages due to her fiancee's death. Iván Bado's testimony is definitely relevant to corroborate that she, in fact, suffered those damages. Accordingly, his testimony as to this aspect is relevant under Fed. R. of Evid. 401.

In sum, since Iván Bado's testimony as to these three aspects is relevant it should be admitted. Fed. R. of Evid. 402. However, even relevant evidence can be excluded "if its probative value is outweighed by the danger of unfair prejudice." Fed. R. of Evid. 403. The Court finds that the probative value of Iván Bado's testimony is not outweighed by the danger of unfair prejudice. Accordingly, the factual scenario does not warrant the extraordinary remedy of the exclusion of relevant evidence. Consequently, defendant's request for the exclusion of Iván Bado's testimony as to the three aspects previously discussed is hereby **DENIED**.

### 2. Testimonial Evidence as to alleged tire explosion

Defendant request the Court to preclude testimonial evidence as to an alleged tire explosion. Defendants sustain plaintiffs should be precluded from presenting evidence as to an alleged loud noise witnesses, Tatiana Cortés and Israel Dominicci heard which they attributed to a tire explosion prior to the loss of control of the vehicle, since they were unsuccessful in pursuing the tire explosion theory.[10]

---

**10.** Plaintiffs concluded that Firestone tires were not the direct cause of the accident. They even concluded that the damages observed in rear tires were caused during the

roll over and not before. Accordingly, plaintiffs voluntarily dismissed the action against Bridgestone–Firestone (Docket No. 24). As to

Plaintiffs opposed. Plaintiffs sustain Tatiana Cortés and Israel Dominicci's testimony regarding their hearing of a loud noise, which they attributed to a tire explosion prior to the driver's lost of control, is admissible under the Fed.R.Evid. 701. Plaintiffs aver that, pursuant to Fed R. Evid. 701 these witnesses' testimonies are admissible if they are rationally based on their perception and are helpful for the determination of a fact in issue. Plaintiffs sustain said testimony is not intended to demonstrate the tires were defective since their own expert has already ruled out said possibility, but to establish that Mr Bado experienced a problem with the tires which the expert's testimony did not rule out.

▆▆ As previously explained, evidence is considered as relevant when it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. of Evid. 401. In the instant case, plaintiffs, pursuant to their own expert's conclusion, have ruled out the possibility that the front and rear tires of the Explorer contributed to the accident that resulted in Mr. Bado's death. For this reason, they dismissed their Complaint against Firestone tires. Accordingly, the fact the tires contributed in any way to the accident object of this case is not in dispute. Hence, the testimony of Tatiana Cortés and Israel Dominicci as to an alleged sound they heard before Mr. Bado lost control of the Explorer and they attributed to a tire explosion would not make less or more probable any fact that is of consequence in the instant action. Accordingly, said testimony is irrelevant, confusing and under Fed. R. of Evid. 403 should be excluded. Consequently, defendant's request for the exclusion of Tatiana Cortés and Israel Dominicci's testimony as

to the alleged sound they heard prior to Mr. Bado's lost of control of the Explorer is hereby **GRANTED**.

### 3. Testimonial evidence, other than plaintiff's economic expert, to establish economic loss

Defendant seeks the exclusion of testimonial evidence, other than plaintiff's economic expert, to establish economic loss. Defendant requests the Court to preclude plaintiffs from presenting Carlos Bado's parents to testify as to the type of person their son was. Defendant sustains said testimony will be emotionally charged, hence, unfairly prejudicial for the defendant. Further, defendant claims that since plaintiffs are to present an expert witness as to this matter, the parents' testimony is cumulative. Accordingly, defendant requests the Court to exclude said testimony.

Plaintiffs contend Carlos Bado's parents' testimony is brought to establish that "beyond what an economist may consider in evaluating school records and employment history, Bado, given his family background and upbringing, could reasonably achieve or exceed what plaintiffs' economist projected." *Plaintiffs' Opposition to Motion in Limine 10* (Docket No.172, p. 3).

▆▆ Definitely, when, as in this case there is a claim of economic loss, an assessment has to be done as to the deceased in order to establish co-plaintiff Carolina Bado's economic loss resulting from Mr. Bado's death. However, plaintiffs are to present an expert who will testify as to this aspect. Mr. Bado parent's testimony as to this aspect, although relevant, besides being cumulative, is definitely very emotionally charged, specially when they are· to testify as to the type of person his

---

the front tires plaintiffs' expert concluded that they did not fail prior to the driver losing

control of the vehicle. Hence, any tire defect evidence is out of bounds.

son was. The Court finds that said testimony pursuant to Fed. R. of Evid. 403 considerations should not be presented to the jury. *United States v. Tse*, 375 F.3d 148, 163 (1st Cir., 2004) ("Usually, courts use the term 'unfair prejudice' for evidence that invites the jury to render a verdict on an improper emotional basis.") Accordingly, defendant's request for the exclusion of the testimony of Eduardo Bado and Arlene Barreto as to Carolina Bado's economic loss is hereby **GRANTED.**

### H. Defendant *Ford Motor Company's Motion in Limine No. 11 to Preclude All Evidence of Inertial Unlatching* (Docket No. 145)

Defendant moves the Court to preclude plaintiffs from presenting evidence or making reference to any expert testimony or evidence related to the "inertial unlatching" of the seat belts. Defendant sustains said evidence should be excluded pursuant to Fed.R.Evid. 702, 703 and 403. Defendant avers that: (1) plaintiffs' expert will only be able to establish the seat belt buckle will release as a consequence of the impact under conditions that do not exist in the vehicle during an accident; (2) said evidence does not meet the standards of Fed.R.Evid. 702, the same lacks of foundation, has no probative value, and is misleading for the jury; (3) the tests proposed by the plaintiffs' expert are not based on any type of scientific methodology and bears no similarity to the circumstances involved in the accident in this case; (4) evidence of other incidents is only admissible if "substantially similar" to the circumstances involved in the case on trial. *Shields v. Sturm et al*, 864 F.2d at 381.

Plaintiffs opposed defendant's request (Docket Nos. 173 and 179), see also plaintiffs' *Response to Motion for Summary Judgment* (Docket No. 189). Plaintiffs sustain said evidence, which will be presented by plaintiffs' expert Dr. David Renfroe, is admissible pursuant to Fed. R.

Evid. 702 and 703. Plaintiffs aver that evidence of inertial unlatching is relevant to establish that Ford was on notice that the 1996 Ford Explorer's seatbelt, the RCF67, was subject to inertial unlatching. Finally, plaintiffs allege that prior incidents of inertial unlatching are admissible since defendant sustains that inertial unlatching does not occur in real world crashes. Accordingly, plaintiffs' expert must establish that the inertial unlatching may occur in real accidents in order to demonstrate that it occurred in the instant case.

#### 1. Plaintiffs' expert scientific tests

*Defendant sustains the proposed evidence as to their contention that the seatbelts were* defective relies solely on plaintiffs' expert "conducting scientifically unreliable tests and NHTSA and Ford testing showing buckle release which plaintiffs' expert assumes is from inertial unlatching." Defendant's *Motion in Limine No. 11* (Docket No. 145 at p. 2).

This is basically a Daubert challenge as to the reliability of the methodology employed by plaintiffs's expert Dr. Renfroe. As it will be extensively discussed in the Court's determination as to defendant's *Motion in Limine No. 12* (Docket No. 146) **this determination warrants a hearing.** (See discussion infra, p. 23.) Until said hearing is held, the Court refrains from issuing a determination as to the admittance of the scientific test employed by said expert to reach his conclusions.

#### 2. Inertial Unlatching

Defendant sustains the inertial unlatching evidence constitutes a "parlor trick", "a trick designed to appeal jurors emotions." Defendant's *Motion in Limine No. 11* (Docket No. 145 at p. 4). Defendant avers the NHTSA has concluded "the engineering characteristics that can cause inertial

unlatching are not present in real world crashes." *Id* at 5 quoting 57 Fed.Reg. 55298, 55299 (Nov. 24, 1992). Accordingly, defendant sustains, the federal agency with appropriate expertise has rejected the notion that inadvertent unlatching can be proved by a laboratory experiment applying a sharp blow to a seatbelt buckle. Consequently, defendant avers, that those experiments have neither relationship with real world conditions nor are reliable scientific methodology and hence, the evidence based thereon should be excluded.

Evidence as to inertial unlatching has been admitted by certain courts and excluded by others. For instance, in *Guild v. General Motors Corp.* 53 F.Supp.2d 363, 369 (W.D.N.Y., 1999) the district court admitted evidence as to inertial unlatching. The district court concluded that "[a]lthough defendant questions plaintiff's experts methodologies and cites to a number of studies and reports which conclude that inertial release does not occur in 'real world' accidents, the mere fact that a difference of opinion exists do not make plaintiffs' experts conclusion inherently unreliable." On the other hand, other districts have excluded said evidence. *Dale v. General Motors Co.*, 109 F.Supp. 2d 1376, 1379–1380 (N.D.Ga.1999) ("the theory of inertial release has been generally rejected as a real world occurrence . . . Indeed the act of intentionally opening a buckle by striking the back side of the buckle housing has been referred to as a 'parlor trick' "); *Rogers v. Ford Motor Co.*, 952 F.Supp. 606, 615 (N.D.Ind.1997)("plaintiffs attempt to rely on expert testimony which lacks of scientific rigor and offers nothing more that a bottom line conclusion [citations omitted] . . . .there is substantial peer review literature which suggests that there is no basis for the allegation that 'Type I' [defendant alleges that this is the same kind of seatbelt used in the Explorer] side release buckles are subject to 'inertial activation' during real world vehicle crashes.") *Citations omitted.*

This is, again, another Daubert challenge as to any part of Dr. Renfroe's testimony that is supported with these experiments as to inertial unlatching. Again, this challenge shall be addressed by the Court after a Daubert Hearing is held. Accordingly, the Court **DENIES without prejudice of holding a hearing.**

### 3. Substantial similarity of the tests and prior accidents and the circumstances involved in the accident in this case

Defendant alleges that evidence as to the inertial unlatching tests should be excluded since plaintiffs have failed to demonstrate the substantial similarity of the circumstances in which the test is performed and the circumstances involved in the accident object of this action. Plaintiffs sustain said evidence should be admitted in order to establish that Ford was put on notice of the fact that the 1996 Ford Explorer seatbelt, the RCF67, was subject to inertial unlatching. Plaintiffs aver evidence submitted to establish the manufacturer was put on notice of the defect need not be proven by involving identical vehicles or accidents under identical circumstances. The Court disagrees and explains.

"The admissibility of the 'crash test' evidence at issue here depends upon a foundational showing of a substantial similarity between the test results being offered into evidence and the circumstances of the accident at issue in the litigation". *Guild v. General Motors Corp.*, 53 F.Supp. 2d at 366, citing *Ramseyer v. General Motors Corp.*, 417 F.2d 859, 864 (8th Cir., 1969). "However, perfect identity between experimental and actual conditions is neither attainable not required" *Id* citing *Lobel v. American Airlines*, 205 F.2d 927, 931 (2nd

Cir., 1953) since "[d]issimilarities between experimental and actual conditions affect the weight of the evidence, not its admissibility." *Szeliga v. General Motors Corp.*, 728 F.2d 566, 567 (1st Cir., 1984). In the same manner, the admission of evidence of prior accidents, as previously discussed when addressing defendant's *Motion in Limine No. 3,* is "predicated upon a showing that the circumstances surrounding them were substantially similar to those involved in the present case." *Ponder v. Warren Tool Co.*, 834 F.2d at 1560 quoting *Karns v. Emerson Elec. Co.* 817 F.2d at 1460. Although, the Court acknowledges that when said evidence is presented to demonstrate defendant's knowledge as to a dangerous condition, the rule requiring substantial similarity of those accidents with the accident at issue is more relaxed. *Shields v. Sturm, Ruger and Co.*, 864 F.2d at 381.

Plaintiffs have failed to establish the substantial similarity of the tests and the accident object of this action. However, the Court at this time, **DENIES WITHOUT PREJUDICE** defendant's request as to the exclusion of these tests. However, the plaintiffs are reminded that the admittance of said evidence depends, should the same pass the Daubert threshold, in that the plaintiffs establish that the circumstances in the accident, object of this action, and the experimental conditions are "substantially similar." Since the Court has not yet determined the admissibility of these tests, the Court refrains from addressing defendant's assertion that said evidence should be excluded pursuant to Fed. R. of Evid. 403 considerations. Again, if no "substantial similarity" is shown, the motion in limine shall be granted.

I. **Defendant *Ford Motor Company's Motion in Limine No. 12 to Exclude or Limit Certain Testimony of David Renfroe Pursuant to Fed. R. Evid. 702* (Docket Nos. 146 and 157)**

Defendant seeks to exclude or limit, pursuant to Fed.R.Evid. 702, certain anticipated testimony as to plaintiff's expert David Refroe. Defendant sustains said expert failed to follow a reliable scientific methodology in arriving at his opinion on inertial release. Accordingly, the tests or any reference to the tests as to the unbuckle seat belt should be excluded. Furthermore, defendant sustains Dr. Renfroe's testimony, about the alleged inertial unlatching in NHTSA[11] tests, the Ford crash tests and the sled tests should be excluded because the circumstances involved in those tests are not "substantially similar" to the circumstances in this case.

Plaintiffs opposed defendant's request (Docket Nos.173 and 179). Plaintiffs sustain said evidence, which is to be presented by plaintiffs' expert Dr. David Renfroe, is admissible pursuant to Fed.R.Evid. 702 and 703. Plaintiffs aver Dr. Renfroe's tests and analysis are admissible since they are "of a type reasonably relied upon experts in a particular field in forming opinions or inferences upon a subject." Plaintiffs aver that the facts gathered for Dr. Renfroe's analysis (from the inspection of the car, accident scene and police report) are sufficiently based of reliable scientific methods.

Expert testimony is admissible if opinions based on "scientific, technical or other specialized knowledge will aid the trier of fact in understanding the evidence or to determine a fact in issue." Fed. R.

---

11. National Highway Traffic Safety Administration, a division of the Department of Transportation.

of Evid. 702. Hence, opinion evidence that would not be helpful to the trier of fact should be excluded. Trial courts have great latitude in assessing whether the expert testimony will materially assist the jury. *United States v. Sebaggala*, 256 F.3d at 65 *citation omitted*. The judge functions as a gatekeeper of proffered expert evidence to ensure that the same is relevant and has a reliable foundation. The Court plays the role of the gatekeeper, but only as to two aspects: (1) the existence of sufficient facts and /or data to allow an expert to reach a conclusion and; (2) the reliability of the principles and methods used to arrive at those opinions. The ultimate weight of an expert's opinion is for the trier of fact, that is, the jury who may then evaluate the weight and credibility of the expert. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469; *Kumho Tire Co., Ltd., et. al. v. Carmichael, et. al.*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238. In other words, any shortcomings in the expert's opinion goes to the weight of the testimony and not to its admissibility. *Cummings v. Standard Register Co.*, 265 F.3d 56, 65 (1st Cir.2001).

 "It is fundamental that '[e]xpert testimony must be predicated on facts legally sufficient to provide a basis for the expert's opinion.' Thus, 'an expert should not be permitted to give an opinion that is based on conjecture or speculation from an insufficient evidentiary foundation.'" *Damon v. Sun Company Inc.*, 87 F.3d 1467, 1474(1st Cir., 1996) *citations omitted*. Hence, expert testimony that is not based on sufficient facts and data must be excluded. *Irvine v. Murad Research Labs.*, 194 F.3d at 321("Absent adequate factual data to support the expert's conclusions his testimony was unreliable"). Neither the sufficiency of the factual basis for Dr. Renfroe's expert opinion nor his qualifications have been challenged. Defendant's objection to the admittance of this expert testimony is limited to the reliability of the methodology employed in order to arrive to his opinion.

This Court has ample discretion when determining whether it should admit or exclude expert testimony. Id. at 320. If an opponent objects to a proposed expert witness, the Court must determine *interalia*, the reliability of the principles and methods employed by the expert in reaching his conclusion. In some cases, a Daubert Hearing must be held. In others, said hearing is unnecessary "where the reliability of the expert's methods are taken for granted" *Kumho Tire Co. v. Carmichael*, 526 U.S. at 152, 119 S.Ct. 1167: Further, on occasions, the Court has sufficient information to make a determination without the necessity of holding a hearing. *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d at 249. The latter is not such a case.

In this case, Dr. Renfroe is to testify, *interalia*, as to the alleged inertial release of Mr. Bado's seatbelt based on his findings following his inspection of the car, accident scene and seat belt subject of this action and in several tests that allegedly support this theory. Defendant sustains plaintiffs' expert has failed to follow a reliable methodology in arriving at his opinion of inertial release. Accordingly, his opinions are inadmissible pursuant to Fed. R. of Evid. 702 as interpreted in *Daubert* and *Kumho Tire*. Further, defendant contends said expert's opinions are inadmissible because they are based on evidence that is neither admissible nor is material that experts on the field rely upon. On this basis defendant requests that this expert's testimony as to inertial release in the accident and as to inertial unlatching in other tests, be excluded or limited.

Fed. R. of Evid. 703 provides that information "... of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the

subject, the facts or data need not to be admissible in evidence ·in order· for the opinion or inference to be admitted." Fed. R. of Evid. 703. This rule allows the admission of expert testimony based on "facts or data ... of a type reasonably relied upon by experts in the particular field." *Trull v. Volkswagen of America* 187 F.3d at 97 *citations omitted.* As previously discussed, the rule allows the expert testimony based on said inadmissible facts or data, it does not allow the data itself. *Engebretsen v. Fairchild Aircraft Corp.* 21 F.3d at 728–729. The rule does permit the disclosure of said evidence to the jury should the Court find that "their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed. R. of Evid. 703. Hence, the principal purpose of this rule is the admittance, not the exclusion, of the expert's opinions and inferences even when the .material that serves as basis of his opinion is not admissible. Accordingly, defendant's reliance on said rule as grounds for requesting the exclusion of expert testimony is inapposite. However, plaintiffs are advised that not because the opinion of their expert is admissible necessarily means that the inadmissible facts or data on which said expert draws his conclusions from is admissible. Said data will only be disclosed to the jury should the Court determine that its value, assisting the jury, in evaluating said expert's testimony outweighs their prejudicial effect.

In the same manner, plaintiffs contention that said evidence is admissible pursuant to Fed. R. of Evid. 703 is misplaced. Plaintiffs sustain that evidence as to the tests is admissible pursuant to Fed. R. Evid. 702 and 703 since it is "of a type reasonably relied upon experts in a particular field in forming opinions or inferences upon a subject." However, as previously explained, this rule simply permits that expert witnesses rely on this type of information to base their conclusions or inferences. It is not a rule that would allow the admittance of evidence otherwise inadmissible unless it is established the probative value in assisting the jury to evaluate the expert's opinion outweighs their prejudicial effect. In other words,. plaintiffs' expert may base his opinions on said inadmissible evidence, providing that it is established that said evidence is "of a type reasonably relied upon experts in the particular field." Accordingly, plaintiffs' contention that said evidence may be admissible pursuant to this rule is erroneous.

Notwithstanding, the question as to the reliability of the principles and methods employed by Dr. Renfroe in arriving to his conclusions must still be assessed. On one hand, defendant sustains that the methodology employed by Dr. Renfroe is not reliable. On the other hand, and .not surprisingly, the plaintiffs sustain the contrary.[12] The Court shall assess .if Dr. Renfroe's testimony as to the seat belt's inertial release is grounded on reliable principles, methods or tests. Accordingly, the Court

---

12. Plaintiffs sustain Dr. Renfroe extensively examined the seatbelt in question, took pictures and measurements that led him to conclude that Mr. Bado was wearing his seatbelt. Further he has studied various tests where inertial unlatching occurred. *Plaintiffs' Opposition to Defendant's Motion in Limine* (Docket No. 178). Further, plaintiffs claim Dr. Renfroe has conducted a study with an identical Explorer, same model, equipped with the same size and model tires that were used by Mr. Bado the night of the accident. Moreover, he used a PC Crash, computer program to merely reconstruct the events of the accident and to assist in calculating speeds and the rollover motions of the vehicle. In their opposition to defendant's motion in limine (Docket No. 178) plaintiffs directed the Court to their *Response in Opposition to Motion for Summary Judgment* (Docket No. 189).

shall conduct a Daubert Hearing where it shall address either "whether the reasoning of the methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals Inc.,* 509 U.S. at 592–93. Consequently, as to defendant's request for the exclusion of Dr. Renfroe's testimony, the Court shall **DISMISS WITHOUT PREJUDICE** its determination until a Daubert Hearing is held as to this matter.

Defendant further sustains that Dr. Renfroe should be precluded from testifying as to three other tests related to inertial unlatching. (NHTSA tests, Ford crash tests, sled tests). Defendant contends that, as to the NHTSA's test, Dr. Renfroe has admitted he has not seen a video of the test, nor inspected the vehicle involved in the test, nor the seat belts involved in the test. As to the Ford crash test, defendant claims Dr. Renfroe has admitted he has not seen either photographs or videos of none of the crash tests performed by Ford. Finally, as to the sled tests, defendant claims Dr. Renfroe' knowledge, as with the Ford Crash tests, is limited to only one document describing the tests. Further, defendant sustains that evidence as to said tests should be inadmissible because plaintiffs have failed to establish the circumstances involved in those tests are substantially similar to the circumstances in the instant case.

 As in the case of prior accidents, "the admissibility of the 'crash test' evidence at issue here depends upon a foundational showing of a substantial simi-larity between the test results being offered into evidence and the circumstances of the accident at issue in the litigation". *Guild v. General Motors Corp.,* 53 F.Supp. 2d at 366, citing *Ramseyer v. General Motors Corp.,* 417 F.2d at 864. "However, perfect identity between experimental and actual conditions is neither attainable not required" *Id* citing *Lobel v. American Airlines,* 205 F.2d at 931 since "[d]issimilarities between experimental and actual conditions affect the weight of the evidence, not its admissibility." *Szeliga v. General Motors Corp.,* 728 F.2d at 567. Plaintiffs have failed to establish the substantial similarity of the tests and the accident object of this action. However, the Court at this time, **DISMISSES WITHOUT PREJUDICE** its determination as defendant's request as to the exclusion of Dr. Renfroe as to this tests, until the Daubert Hearing is conducted. However, the plaintiffs are reminded that should the Court, after holding the Daubert Hearing decide to allow Dr. Renfroe's testimony, he may use them, as basis of his opinion, providing that they are "of a type reasonably relied upon by experts in the particular field." Fed. R. of Evid. 703.[13] Should the Court find that "their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect" Fed. R. of Evid. 703, the Court shall allow said disclosure. But should plaintiffs seek the admittance of this test, they have to establish substantial similarity of this tests and the accident subject of this litigation. The court further emphasizes that "the Daubert court imposed a special relevancy request. (Citations omitted)." To be ad-

**13.** In determining reliability the courts look to several factors (1) the verifiability of the experts' theory or technique (2) the error rate inherent (3) whether the theory or technique has been published and/or subject to peer review and its level of acceptance within the scientific community (the criteria) are not numerus clausus and hence "not a definite checklist or test." See *Ruiz–Troche v. Pepsi Cola of Puerto Rico,* 161 F.3d 77, 80–81 (1st Cir.1998). It is "the methodology that is ultimately tested" rather than its conclusions. The trial court is reviewed only for "abuse of discretion." *Ruiz–Troche Id.* citing *Daubert,* 113 S.Ct. 2786.

missible, "the expert testimony must be relevant not only in the sense that all evidence must be relevant, see Fed. R.Evid. 402, but also in the incremental sense that the expert's proposed opinion if admitted likely would assist the trier of facts in issue." *Ruiz–Troche,* Id. Citing *Daubert,* 509 U.S. at 591–592, 113 S.Ct. 2786, 125 L.Ed.2d 469.

The court has denied various of the requests made by defendants without prejudice based on two cases. First, the court must perform gate keeping under Daubert which has been summarized in the case of *Seahorse Marine Supplies, Inc. v. Puerto Rico Sun Oil Co.,* 295 F.3d 68, 80–81 (1st Cir.2002) as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. *Fed.R.Evid.* 702. The Supreme Court's decisions in *Kumho Tire* and *Daubert* guide a district court in determining how to assess the admissibility of such expert testimony. Pursuant to *Daubert,* the district court must perform a gatekeeping function by preliminarily assessing "whether the reasoning or methodology underlying the testimony is scientifically valid and [ ] whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 592–93, 113 S.Ct. 2786.. Several factors may assist the district court in making its determination: whether the theory/technique can be and has been tested; whether it has been subjected to peer review and publication; the known or

potential rate of error; and the level of the theory/technique's acceptance within the relevant scientific community. *81 *Id.* at 593–94, 113 S.Ct. 2786. Although the approach is flexible by its nature (after all, expert testimony and the peculiar facts of each case so demand), the overarching concern is on the "evidentiary relevance and reliability" of the proposed testimony. *Id.* at 595, 113 S.Ct. 2786. In *Kumho Tire,* the Court extended its holding in *Daubert* and held that the gatekeeping function applies to technical and other specialized knowledge in addition to scientific testimony. *Kumho Tire,* 526 U.S. at 141, 119 S.Ct. 1167. The Court stressed that the district court must have "considerable leeway" in both "how to determine reliability" and "its ultimate conclusion." *Id.* at 152–53, 119 S.Ct. 1167. The ultimate credibility determination and the testimony's accorded weight are in the jury's province. *See Mitchell v. United States,* 141 F.3d 8, 16–17 (1st Cir.1998). With these general principles in mind, we now consider whether the district court abused its discretion in admitting Calero's testimony. *See Kumho Tire,* 526 U.S. at 152, 119 S.Ct. 1167 (citing *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 138–39, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) ).

■ Second, a hearing is required under the Daubert circuit court opinion in order to exercise the gate keeping function. "[W]here the opposing party ... raises a material dispute as to the admissibility of scientific evidence, the district court **must hold** on in limine hearing to consider the conflicting evidence and **make findings** about the relevance and reliability of the methodology employed by the scientific experts." (Emphasis ours.) *Daubert v. Merrell Dow Pharms Inc.,* 43 F.3d 1311, 1309 n. 10. (9th Cir.1995).

The First Circuit has granted district court leeway as to when to hold the hearing in *United States v. Díaz*, 300 F.3d 66, 73 (1st Cir.2002):

The *Rule 702* inquiry is a "flexible one," *Daubert,* 509 U.S. at 594, 113 S.Ct. 2786, and there is no particular procedure that the trial court is required to follow in executing its gatekeeping function under *Daubert.* In *Kumho Tire,* the Supreme Court stated: The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate \*74 reliability, as it enjoys when it decides *whether* that expert's relevant testimony is reliable.... Otherwise, the trial judge would lack the discretionary authority needed both to avoid unnecessary "reliability" proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises.

526 U.S. at 152, 119 S.Ct. 1167 As the Ninth Circuit has determined, "[a]lthough the [*Daubert* ] Court stated that the inquiry is a 'preliminary' one, to be made 'at the outset,' this does not mean that it must be made in a separate, pretrial hearing, outside the presence of the jury." *United States v. Alatorre,* 222 F.3d 1098, 1102 (9th Cir.2000) (quoting *Daubert,* 509 U.S. at 592, 113 S.Ct. 2786) (finding voir dire of expert in presence of jury to be permissible under *Daubert* ); *see also United States v.*

*Nichols, 169 F.3d 1255, 1262–1264 (10th Cir.1999)* (trial court has discretion not to hold pretrial evidentiary reliability hearing in carrying out its gatekeeping function).

Notwithstanding, however, pre-trial hearings are clearly preferable in complicated cases. *Padillas v. Stork–Gamco Inc.,* 186 F.3d 412, 417–418 (3rd Cir. 1999) [14] and exceptionally, on the other hand, Daubert hearings are unnecessary in ordinary cases "where the reliability of an expert's methods is properly taken for granted." *Kumho Tire Co. v. Carmichail,* 526 U.S. at 152, 119 S.Ct. 1167, 143 L.Ed.2d 238; *United States v. Evans,* 272 F.3d 1069, 1094 (8th Cir.2001); *United States v. Nichols,* 169 F.3d 1255, 1262, 1264 (10th Cir.1999). Further, in some instances, the pre-trial submittals, disclosures and discovery materials allows the court to make its reliability determination without holding a hearing. *Oddi v. Ford Motor Co.,* 234 F.3d 136, 142–146 (3rd Cir.2000). The court holds that a hearing is necessary in all those Daubert related motions in limine wherein the court has denied the matter without prejudice of holding a hearing.

## IV. Plaintiffs' Opposed Motions in Limine

### A. Plaintiffs *Motion in Limine to Preclude the Testimony of Ed Paddock and to Limit Ford Expert Eddie Cooper's Testimony* (Docket No. 149).[15]

Plaintiffs request the Court to exclude, as cumulative, the testimony of Ed Paddock. Further, plaintiffs request the testi-

---

**14.** *Kumho Tire Co.,* 526 U.S. at 152, 119 S.Ct. 1167, requires a hearing "in the less usual or more complex cases where cause for questioning the expert reliability arises."

**15.** The system does not reflect a Docket Number for this motion. Docket No. 149 in the system, reflects plaintiffs' Motion in Limine to Exclude Michelle Bogler's testimony which in reality is Docket No. 151. The system reflects that Docket No. 151 is plaintiffs' Motion in Limine to Exclude Testimony of Prevalence of Alcohol Related Accidents in the Area, which in reality is Docket No. 148.

mony of Eddie Cooper be limited to those issues that are not to be covered by Robert Gratzinger and to rebut any issues raised by plaintiffs' expert which Mr Gratzinger could not address. Defendant opposed the request (Docket No. 158).[16]

After said opposition, defendant filed its streamlined list of fact and expert witnesses (Docket No. 186) were defendant advised the Court Ford will present the testimony of either Eddie Cooper or Robert Gratzinger as to the issues concerning seatbelt design and inertial release. Accordingly, plaintiffs' request for the Court to limit Eddie Cooper's testimony to those issues which are not to be covered by Robert Gratzinger and to rebut any issues raised by plaintiffs' expert which Mr. Gratzinger could not address has become **MOOT.**

Plaintiffs' other request is the exclusion of Ed Paddock's testimony. Plaintiffs sustain said testimony is cumulative since his testimony as to the design performance and function of the seatbelt of the Explorer, is to be addressed by Eddie Cooper or Robert Gratzinger.

After defendants streamline of the witnesses, the Court finds that Ed Paddock's testimony, which is noticed as potential rebuttal evidence is not cumulative. Accordingly, plaintiffs' request for its exclusion is hereby **DENIED.**

### B. Plaintiffs' *Motion in Limine to Exclude Testimony of Michelle Vogler* (Docket No. 151)[17]

Plaintiff avers Michelle Vogler's testimony is cumulative to that of Lee Carr and Terry Thomas. All three experts are to testify as to Explorer's safe design. Accordingly, it should be excluded. Defendant opposed the request (Docket No. 158).

The Court shall analyze plaintiffs' request considering the defendant's streamlined list of witnesses (Docket No. 186). The Court notes defendants are to present Lee Carr or Terry Thomas who will testify as to the dynamic design characteristics of the Ford Explorer, including handling, stability, steering and braking characteristics. Dr. Vogler is to testify as to her statistical risk analysis of the Explorer based on her review of accident statistics maintained by government agencies. She will describe how the Explorer's accident experience does not indicate the vehicle presents an unreasonable risk of roll over. Further, her analysis demonstrates how occupants who fail to wear their seatbelts face a higher risk of injury. As to this last aspect, plaintiffs sustain that said testimony holds no probative value since the jury must determine as to the seatbelts, if Carlos Bado was wearing a seatbelt, if the seatbelt was defective and whether the

**16.** Defendant sustains that the testimony proposed by them is not repetitive since each testimony will address different defect allegations, methods of testing, factual issues or different methods of analysis. Defendant sustains that theses multiple witnesses are necessitated by the unreliable theories and misidentified bases of their own seatbelt defect theory. Defendant sustain that since plaintiffs' expert David Renfroe failed to identify the grounds for his opinion as to the seat belt release during the rollover event different witnesses must rebut the testimony. Mr Gratzinger is to testify as to the seatbelt design

and operations. Dr. Hatsell is to testify as to occupants movements, injury patterns and injury causation during the rollover. Eddie Cooper and Ed Paddock are to rebut Renfroe as to the test reports used to support his opinion. Each will discuss a distinct portion of data which Renfroe claims as supportive.

**17.** The system reflects that Docket No. 151, is plaintiffs' Motion in Limine to Exclude Testimony About Prevalence of Alcohol Related Accidents in the Area, when in reality said motion is Docket No. 148.

seatbelt was the proximate cause of Bado's damages.

The Court finds defendant's proposed evidence is not cumulative. While either Lee Carr or Terry Thomas are to testify as to the dynamic design of the Ford Explorer, Ms. Vogler is to testify as to statistical risk analysis of the Explorer based on accident statistics and the Explorer's accident experience. These testimonies focus on different aspects. The first as to its design, handling, stability, steering and braking characteristics of the vehicle, while Dr. Vogler's testimony focuses on the Explorer's accident experience. Further, since plaintiffs contend the subject Explorer defect is the causation of the accident, defendants should be allowed to present evidence that would make more or less probable the fact that the vehicle's design is the cause of the accident. Furthermore, although the plaintiffs are correct that it is for the jury to decide whether Mr. Bado was wearing his seatbelt or not, defendant has the right to present evidence that would make more or less probable the fact that he was not, as defendant contends, wearing the seatbelt. The court notes that this matter is imbued with issues of credibility which are not subject to be normally determined in motions in limine. Accordingly, Dr. Vogler's testimony as to this aspect is also relevant. Hence, plaintiffs request for the exclusion as cumulative of Ms. Vogler's experience is hereby **DENIED.**

C. **Plaintiffs'** *Motion in Limine to Preclude Cumulative Testimony* (Docket No. 153)

Plaintiffs request the Court to preclude defendants from presenting cumulative evidence as to the existence of a design defect in the Ford Explorer and its seatbelt, evidence to demonstrate these designs were not the proximate cause of the accident and any inherent risks in the product are outweighed by its benefits. Plaintiffs sustain defendant has announced several witnesses to testify as to these areas and several of the witnesses should be precluded from testifying since their testimony would be cumulative. In sum, plaintiffs request the Court to preclude defendant from presenting the testimony of Donald Tandy, Robert Pascarella, Charles White, Hank Sleath or Karen Judge, Ernie Gush, Charles Gold or Alan Milner, Ed Paddock, Eddie Cooper Charles Hatsell and William Boehly.

Defendant opposed plaintiffs' request (Docket No. 158). Defendant alleges the testimonies of Donald Tandy, Robert Pascarella and Hank Sleath will address different issues as to the subject of vehicle stability. Donald Tandy, Robert Pascarella, Hank Sleath were personally involved in different portions of the testing and computer analysis utilized by Ford to ensure the Explorer had acceptable stability characteristics. Further, Donald Tandy will rebut plaintiffs' allegations and evidence pertaining to other alleged vices of other versions of the Explorer. These experts, defendant sustains, will describe testing and other analysis performed in different versions. Mr. Milner and Mr. Gold are tire experts who will testify about tires blowout.

The Court considers each of the areas where defendants have announced several witnesses. Further, the Court shall consider in this analysis, the list of defendant's witnesses as to each area as announced in their *Streamline List of Fact Experts and Expert Witnesses to Be Presented at Trial* (Docket No. 186). Defendant has already announced it is not calling Charles White, Karen Judge, Ernie Grush and William Boehly. Accordingly as to those four witnesses plaintiffs request has become **MOOT.** Further, since the Court precluded plaintiffs from pre-

senting testimony as to the tires blowout, hence, plaintiffs' request as to Charles Gold and Alan Milner is **GRANTED.**

### 1. Vehicle handling and stability

In their streamlined list of witnesses, defendants announced they will present the testimony of either Lee Carr or Terry Thomas to testify as to the dynamic design characteristics of the Ford Explorer, including handling, stability, steering and braking characteristics of the vehicle. Defendants have eliminated all the factual witnesses they had announced. The plaintiffs specifically averred that as to this aspect the issue is best addressed by expert testimony and only Terry Thomas or Lee Carr should be testifying. Defendant complied with plaintiffs' request. Accordingly, plaintiffs' request for the exclusion of the testimony of the previously announced factual witnesses has become **MOOT.**

### 2. Development and testing of vehicle dynamics test and computer simulations

Plaintiffs sustain that in this area Ford has announced former employee Donald Tandy and expert Terry Thomas. Plaintiffs claim their testimony is cumulative. Specifically, plaintiffs request the exclusion of the testimony of Donald Tandy. In their streamlined list of witnesses, Ford announced the testimony of no more than two of the following: Donald Tandy, Robert Pascarella and Henry Sleath. They are all engineers who were employed by Ford during the period in which the Ford Explorer at issue was designed and developed. Defendant sustains that "because the pre-production testing and design evaluation work of the Ford Explorer was extensive, encompassing on-track physical

testing of prototypes as well as analysis using correlated vehicle motors" (Docket No. 186 at p. 3), to fully describe the work done, the testimony of two of these engineers are necessary.

Cumulative evidence, although relevant may be excluded pursuant to Fed. R. of Evid. 403. The Court is not certain if the two witnesses proposed by defendant to testify as to development and testing of the vehicle are to testify as to different stages of the development and testing process or if each of them is capable of testifying as to the whole process. The Court shall allow both witnesses if they are to testify as to different stages of the process. The Court shall not allow cumulative evidence to be presented. Accordingly, plaintiffs' request for the exclusion of Donald Tandy, Robert Pascarella and/or Heath Sleath is **DENIED without PREJUDICE.**

### 3. Design performance and function of the seatbelts

Defendant, in its streamlined list of witnesses has announced Eddie Cooper **or** Robert Gratzinger to present their opinion testimony as to the design, development, testing, manufacture and use of the vehicle's occupant restraint system. Defendant further announced the use of Edward Paddock and/or Terry Thomas as rebuttal experts should plaintiffs' expert Dr. Renfroe discuss or present the tests that support his opinion the seatbelts used at the Ford Explorer are prone to inertial release. The Court finds defendant is not incurring in cumulative evidence presentation. Accordingly, plaintiffs' request is **DENIED.**[18]

---

**18.** The court notes that certain testimonial evidence of Dr. Renfroe is still pending Daubert/Kumho tire analysis as to the court's gate keeping functions. In this respect, the motion is at least premature.

### 4. Injury Mechanism

Defendant has announced Dr. Charles Hatchet to testify, as an expert in biomechanics, as to the application of general biomechanical principles, occupants' movements, injury patterns and injury causation during the roll over sequence. Plaintiffs sustain that his testimony as to his conclusion that the injuries were a result of the rollover is an uncontested fact addressed by defendant expert Robert Robuca at his deposition. Defendant expert Robert Robuca is to testify as to the reconstruction of the subject accident and render opinions as to the movement and path of the Ford Explorer and the causation of the accident. Further, Dr. Hatchett's testimony as to his conclusion that alcohol made Mr. Bado severely impaired was addressed, plaintiffs sustain by Dr. Angel Roman in his deposition. Angel Roman, is to testify regarding the deceased's alcohol impairment and as rebuttal of plaintiffs' theory that Mr. Bado was conscious a short while after the accident. Accordingly, plaintiffs sustain that Dr. Hatsell testimony is also cumulative.

The fact that other experts have addressed the matter in their depositions does not make the testimony cumulative if defendant does not present, at trial, the testimony of said experts. However, at their Amended Joint Proposed Pre Trial Order (Docket No. 160), defendant has announced Robert Robuca and Angel Roman as expert witnesses that will be presented in trial. Dr. Hatchett's testimony as to the deceased's alleged alcohol impairment will be addressed by Dr. Roman. Accordingly, Dr. Hatchett's testimony as to said aspect is cumulative.

■ Consequently, as to the alleged Mr. Bado's alcohol impairment plaintiffs' request is **GRANTED.** Defendant shall present the testimony of only one expert as to this aspect. The Court instructs defendants to select which of their experts

shall address this topic. Dr. Hatchett is to testify as to the vehicles's occupants movement in the car during the accident and injury causation. Expert Robert Robuca is to testify as to the reconstruction of the accident, the causation of the same and the movement and path of the Explorer. The Court finds that these two testimonies differ in the sense that one addresses the movement of the occupants within the vehicle and injury causation, and the other addresses the movement of the Explorer and the accident causation. Accordingly, the testimony of these two experts is not cumulative and plaintiffs' request for exclusion is hereby **DENIED.**

### 5. Compliance with federal regulations

Finally, defendant's expert, William Boehly, is to testify as to defendant's compliance with federal regulations with respect to the Explorer, the purpose and responsibilities of NHTSA regulation, the process utilized by NHTSA in regulating and investigating alleged vehicle safety defects, including the standard relied on by NHTSA to enforce applicable safety standards. Further, he is to testify as to NHTSA's role in matters related to motor vehicle safety including both regulatory and defect functions. Furthermore, he is to testify as to NHTSA's efforts to identify a standard for rollover resistance. Plaintiffs sustain said evidence is cumulative to defendant's expert Terry Thomas or Lee Carr's conclusion that the 1996 Ford Explorer is not defective and to Ed Paddock's testimony as to NHTSA's investigation on inertial unlatching which is also cumulative to Gratzinger's testimony. Accordingly, Boehly's testimony, plaintiffs sustain, is cumulative and should be excluded.

■ Lee Carr or Terry Thomas are factual experts that will testify as to the dynamic design characteristics of the Ford

Explorer. Edward Paddock is announced as a rebuttal witness as to plaintiffs' inertial release of the seatbelts. At this time, the Court does not find expert Boehly's testimony as to federal regulations and the NHTSA as cumulative. Accordingly, plaintiffs' request for the exclusion of said testimony is hereby **DENIED.**

Therefore, Docket No. 143 is GRANTED in part and DENIED IN PART as stated herein.

## V. CONCLUSION

For the reasons thoroughly discussed infra at this Opinion, the Court rules as follows:

1. Defendant *Ford Motor Company's Motion in Limine No. 2 to Preclude Evidence Regarding Irrelevant Recall Notices* (Docket No. 136) is hereby **GRANTED.**

2. Defendant *Ford Motor Company's Motion in Limine No. 4 to Exclude Any and All Evidence of /or Reference to the Ford Pinto or the Firestone Tire Recall* (Docket No. 138) is hereby **GRANTED.**

3. Defendant *Ford Motor Company's Motion in Limine No. 8 to Preclude Evidence of Subsequent Design Changes* (Docket No. 142) is hereby **GRANTED.**

4. Defendant *Ford Motor Company's Motion in Limine No. 13 to Exclude References to Closing Argument in Buell–Wilson Litigation* (Docket No. 147) is hereby **GRANTED.**

5. Plaintiffs' *Motion in Limine to Exclude Testimony About Prevalence of Alcohol Related Accidents in the Area* (Docket No. 148) is hereby **GRANTED.**

6. Plaintiffs' *Motion in Limine to Preclude Commentary or Testimony Geared to Justify a Verdict Against Plaintiffs as a "Matter of Principle" and/or to "Send a Message"* (Docket No. 155) Accordingly plaintiffs' *Motion in Limine to preclude Commentary or Testimony Geared to Justify a Verdict Against Plaintiffs as a "Matter of Principle" and/or to "Send a Message"* (Docket No. 155) is hereby **GRANTED.**

7. The determination as to defendant *Ford Motor Company's Motion in Limine No. 1 to Preclude Plaintiffs from Presenting Any Evidence of Mild Traumatic Brain Injury* (Docket No. 135) **is DENIED WITHOUT PREJUDICE** until a Daubert Hearing is held.

8. Defendant *Ford Motor Company's Motion in Limine No. 3 to Preclude Evidence of Other Accidents, Lawsuits or Claims* (Docket No. 137) is hereby **DENIED WITHOUT PREJUDICE pending a hearing to show "reasonable similarity" between the accidents.**

9. Defendant *Ford Motor Company's Motion in Limine No. 5 to Preclude Post Mortem Photographs of the Deceased* (Docket No. 139) is **GRANTED** as to the exclusion of autopsy photographs and **DENIED WITHOUT PREJUDICE** as to the post mortem photographs of Mr. Bado at the scene of the accident. (No further hearing required as to post Morten photographs the matter shall be decided by the court at trial.)

10. Defendant *Ford Motor Company's Motion in Limine No. 6 to Preclude Plaintiffs, their Attorneys, or their Experts from making Reference to or Presenting Evidence of News Articles or Television Programs Regarding or Referring to the Ford Explorer* (Docket No. 140) is **GRANTED** as to the exclusion of any news articles or television programs, including the testing described on those programs and/or articles regarding or referring to tire defect and **DENIED WITHOUT PREJUDICE** as to the exclusion of news articles and television programs containing evidence as to prior accidents.(Pending proof as to "reasonable similarity" as to the accidents.) Should no proof exist this motion is GRANTED.

11. Defendant *Ford Motor Company's Motion in Limine No. 7 to Exclude any Reference to or Evidence, Testimony or Argument Concerning the Design and Development History of the Bronco II and the First Generation Explorer* (Docket No. 141) is hereby **DENIED.**

12. Defendant *Ford Motor Company's Motion in Limine No. 9 to Preclude Testimonial Evidence in Support of the Survival Claim (Mr. Bado's State of Consciousness)* (Docket No. 143) is hereby **DENIED** as to the exclusion of any factual witness' testimony; Israel Dominicci, Georgina González and Tatiana Cortés as to the Mr. Bado's alleged actions in order to establish his state of consciousness after the accident and **GRANTED** as to the exclusion of Dr. Landrau's expert testimony.

13. Defendant *Ford Motor Company's Motion in Limine No. 10 to Preclude Certain Fact Witness Testimony* (Docket No. 144) is hereby **DENIED** as to Iván Bado's testimonial evidence as to events surrounding the accident, **GRANTED** as to the exclusion of testimonial evidence as to alleged tire explosion and **GRANTED** as to testimonial evidence, other than plaintiff's economic expert, to establish economic loss.

14. The determination as to defendant *Ford Motor Company's Motion in Limine No. 11 to Preclude All Evidence of Inertial Unlatching* (Docket No. 145) is **DENIED WITHOUT PREJUDICE** as to the exclusion of plaintiffs' expert scientific tests and as to Dr. Renfroe's testimony as to inertial unlatching until a Daubert Hearing is conducted. The Court **DENIES WITHOUT PREJUDICE** defendant's request as to the exclusion of the evidence of prior accidents. Both matters are **DENIED WITHOUT PREJUDICE** pending Daubert hearings.

15. Defendant *Ford Motor Company's Motion in Limine No. 12 to Exclude or Limit Certain Testimony of David Renfroe Pursuant to Fed. R. Evid. 702* (Docket Nos. 146 and 157) is **DENIED WITHOUT PREJUDICE** until a Daubert Hearing is held.

16. Plaintiffs' *Motion in Limine to Preclude the Testimony of Ed Paddock and to Limit Ford Expert Eddie Cooper's Testimony* (Docket No. 149) is **MOOT** as to plaintiffs' request for the Court to limit Eddie Cooper's testimony and **DENIED** as to plaintiffs' request for the exclusion of Ed Paddock's testimony.

17. Plaintiffs' *Motion in Limine to Exclude Testimony of Michelle Vogler* (Docket No. 151) is hereby **DENIED.**

18. Plaintiffs' *Motion in Limine to Preclude Cumulative Testimony* (Docket No. 153) as to Charles White, Karen Judge, Ernie Grush and William Boehly is **MOOT;** as to Charles Gold and Alan Milner is **GRANTED;** as to Terry Thomas or Lee Carr is **MOOT;** as to Donald Tandy, Robert Pascarella and/or Heath Sleath is **DENIED without PREJUDICE;** as to the evidence of design performance and function of the seatbelts the request is **DENIED;** as to Dr. Hatchett's testimony as to the alcohol impairment aspect plaintiffs' request is **GRANTED;** plaintiffs' request regarding the exclusion of either Dr. Hatchett and Robert Robuca's testimony as to injury mechanisms is hereby **DENIED** and; plaintiffs' request for the exclusion of Boehly's testimony regarding federal regulations and the NHTSA, is hereby **DENIED.**

There are therefore various Daubert motions and non-Daubert motions that the court must receive evidence in order to rule that have been denied without prejudice pending the holding of hearings. The court intends to hear all motions successively in consecutive days prior to trial. The court, however, invites the parties to attempt to reach agreement as to some of the requests remaining based on the guid-

ance provided by the court in this order. The court shall hold the hearings on the month of April/May/June 2005 depending on the days needed to consecutively hold the hearings. Counsel are to contact the undersigned Judge on a joint conference call within the **next ten (10) days** to coordinate the dates of the hearing. The parties are to exhaust the possibility of agreeing as to some of the pending issues prior to calling the chambers of the Judge.

**IT IS SO ORDERED.**